# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
May 13, 2008 Session

## CHAD ALAN PARKER v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Rutherford County**
No. F-59907     Don R. Ash, Judge

_____

### No. M2007-02799-CCA-R3-PC - Filed July 31, 2008

_____

The Petitioner, Chad Alan Parker, pled nolo contendre to one count of aggravated sexual battery and one count of burglary of an automobile. The trial court sentenced him to ten years of incarceration and community supervision for life for the aggravated sexual battery conviction, and to two years for the burglary conviction. The trial court ordered that the sentences run concurrently. The Petitioner filed a pro se petition for post-conviction relief, which was amended by appointed counsel, alleging he received the ineffective assistance of counsel. After reviewing the issues and applicable authorities, we reverse the post-conviction court's judgment and remand the case for the Petitioner to withdraw his best interest plea.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which J.C. McLIN, J., joined. D. KELLY THOMAS, JR., J., filed a dissenting opinion.

W.H. (Steve) Stephenson, II, Nashville, Tennessee, for the Appellant, Chad Alan Parker.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Benjamin A. Ball, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

A Rutherford County Grand Jury indicted the Petitioner for one count of attempted aggravated rape, one count of aggravated sexual battery, and one count of burglary of an automobile. At the hearing on the Petitioner's plea to one count of aggravated sexual battery and one count of burglary of an automobile, the State informed the trial court that, had the case gone to trial, the evidence would have shown:

Detective Craig Snyder of the Murfreesboro Police Department . . . would testify as follows. That on or about the 28th day of December, 2005, he responded to the Target parking lot in reference to sexual battery of a female victim. The investigation revealed that the female victim was entering her vehicle at the Target parking lot when a male subject, later identified as Chad Parker, pushed her from behind into her vehicle, began pulling up her skirt, attempted to remove her underwear. The victim began sounding her horn on the vehicle at which time several witnesses approached the vehicle, tried to assist her, did follow Mr. Parker, did call 9-1-1 and give the police directions on how to get there and did keep him in view until the police did come. The police then apprehended him near the Lowe's. . . .

The trial court questioned the Petitioner and then accepted his guilty plea. The trial court entered the sentence agreed to by the parties, that being ten years of incarceration, to be served at 100%, and community supervision for life for the aggravated sexual battery conviction. It also entered the agreed sentence for the burglary conviction, two years, and ordered the sentences to run concurrently.

Although the Petitioner did not file an appeal, he subsequently filed a letter with the trial court, which the trial court treated as a pro se petition for post-conviction relief. The trial court appointed him counsel, and counsel amended the petition. At a hearing on the petition, the following occurred: The Petitioner's trial counsel ("Counsel") testified about the charges the Petitioner faced as part of this indictment and about those he also faced for seven pending violations of the sexual offender registry. Counsel said that he received discovery from the State early in the case, and he had access to the State's complete file.

Counsel testified that he investigated this case by trying to interview witnesses and reviewing the discovery, including the 9-1-1 calls. Based upon his investigation, he discussed the preparation and trial strategy with the Petitioner. Counsel testified that the State made the Petitioner an offer, which the Petitioner rejected. Counsel negotiated a deal with the State, and the State accepted one of Counsel's "counteroffers" on June 26, 2006, the day of the guilty plea hearing. Counsel discussed the agreement with the Petitioner before the hearing. Counsel agreed that the petition to enter the guilty plea agreement listed that the Petitioner was pleading guilty as a Range I offender, which was incorrect.

Counsel testified that the plea agreement required that the Petitioner be on community supervision for life, in accordance with Tennessee Code Annotated section 39-13-524. Counsel said that, from his perspective on the 26th, this posed no additional consequences to the Petitioner because the Petitioner was, as a result of a previous conviction, already required to be on community supervision for life and on the sexual offender registry. Counsel explained as much to the Petitioner, telling the Petitioner that there would be restrictions on where the Petitioner lived and worked after he was released from prison. Counsel conceded that he later learned that there was more to the statute than he represented to the Petitioner. Counsel said that he did not discuss with the State's attorney what community supervision for life entailed. Counsel agreed that on the day of the hearing the Petitioner asked him questions about the

community supervision. Counsel told him that he did not have his statute book with him, but he would look up the statute later and "get back" to the Petitioner.

Counsel testified that he represented another defendant in a post-conviction case and raised the same issue that the Petitioner in this case raised. He said that he reviewed statute 39-13-524 and realized the "actual depths" of the statute and the requirements, which were more than he represented to the Petitioner. After reading the statute, Counsel brought a copy of the statute to the Petitioner in jail. He said that the actual status of the law and the requirements that it imposed upon the Petitioner were greater than he had represented to the Petitioner. For instance, the law requires that one on community supervision be under the supervision and control of the Board of Probation and Parole similar to a person under parole supervision. The board is authorized to establish conditions of community supervision that are necessary to protect the public from a defendant committing a new sexual offense, as well as promoting the rehabilitation of the person. Further, the law states that the board is authorized to impose and enforce a supervision and rehabilitation fee upon a person on community supervision similar to a fee imposed by the other parole statute. Counsel testified that the statute also states that the first violation of community supervision is a Class A misdemeanor and the second is a Class E felony, even though the supervisee is not technically on probation or parole.

When Counsel explained the law to the Petitioner, the Petitioner told him that if he knew that the supervision was going to be as the statute proscribed it, then he would not have pled guilty. Counsel said that he believed that there was a "significant difference" between the law as he described it to the Petitioner and the actual law. Counsel stated he believed that it was error for him not to explain all the provisions of this statute to the Petitioner before the Petitioner pled guilty.

On cross-examination, Counsel testified that he could not be sure of the conditions with which the Petitioner would have to comply upon the Petitioner's release, in part because the Petitioner's probation officer could impose any conditions within his or her authority. Counsel agreed that he cannot explain to any client the exact terms of their parole because those details are not available to him. Further, he said that he also cannot tell his clients what their exact fee for parole will be. Counsel agreed that the Petitioner had served prison time for a sex crime in the past, making the Petitioner familiar with the requirements of the sexual offender registry. Counsel also conceded that, had the Petitioner gone to trial and been convicted, the Petitioner would be released subject to the same restrictions as he was subject to as a result of his guilty plea.

Counsel testified that he felt he had a command of the facts of this case and that he discussed the case with the Petitioner on numerous occasions. Further, Counsel testified that he discussed the post-conviction case with the Petitioner, and the Petitioner understood that if the petition is granted the Petitioner will go to trial. Counsel testified that the video surveillance tape from the Target and Lowe's involved in this case showed that the Petitioner was at the scene of this attack.

Counsel agreed that the trial judge explained to the Petitioner at the guilty plea hearing that the Petitioner would be subject to community supervision. The court asked the Petitioner if he had any questions, and the Petitioner responded that he did not.

The Petitioner testified that he recalled the plea negotiations went "back and forth" prior to the guilty plea hearing, and they finally reached an agreement on June 26, before the hearing. The Petitioner said that Counsel told him that the State was making their final offer, and he could take the offer or they were going to try the case that day. The Petitioner said that it had been his plan to go to trial. Counsel informed the Petitioner that the offer was ten years at 100%, which the Petitioner did not like. Counsel also informed the Petitioner that he would be under community supervision for life, and this was the first time during all the plea negotiations that the Petitioner had heard this term. The Petitioner asked Counsel what that entailed, and Counsel informed him that, to the best of his knowledge, it meant that the Petitioner could not live or work around a daycare. Counsel told the Petitioner it was the same as his sex offender registry requirements, which he had to comply with anyway. Counsel told him that he would not have a parole officer but that he would be subject to the sexual offender registry requirements, which was unsupervised. The Petitioner said that there were no fees involved for the sexual offender registry, and he assumed this was the same for community supervision for life.

The Petitioner testified that, later, he learned that he would actually have to be on parole the rest of his life and that he would have to pay a $45 fee every month for the rest of his life. The Petitioner said that, had he known of these consequences, he would have asked Counsel to get another plea agreement or to take the case to trial.

On cross-examination, the Petitioner agreed that the statute may not explicitly state that he must pay $45 per month but that Counsel explained this to him after he had pled guilty. The Petitioner said that he did not file a motion to withdraw his guilty plea because Counsel told him to file a post-conviction petition.

Based upon this evidence and the filings of the parties, the post-conviction court denied the Petitioner's petition for post-conviction relief.

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court erred when it denied his petition because he received the ineffective assistance of counsel. He also asserts his "best interest" plea was not knowingly and voluntarily entered because it was entered as a result of materially incorrect and/or deficient information provided to him by trial counsel. This is based upon the fact that he was not informed of the consequences of the "community supervision for life" provision of his sentence.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). Upon

review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. *Id.* at 457. We will discuss each issue in turn.

## A. Ineffective Assistance of Counsel

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688 (1984)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland,* 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a

strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. *House*, 44 S.W.3d at 515 (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. *House*, 44 S.W.3d at 515.

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994). In the context of a guilty plea, to satisfy the prejudice prong of *Strickland*, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

In the case under submission, the post-conviction court found Counsel's performance was deficient but that the Petitioner did not prove prejudice, stating:

> This Court is of the opinion that Petitioner has not satisfied his burden of proof required to establish an order for post-conviction relief. The court concedes that the Petitioner's counsel's performance was deficient in some way. *See Burns* 6 S.[W].2d at 461. However, the Petitioner must satisfy both prongs of the *Burns* test to prove ineffective assistance of counsel. The Court is of the opinion that the Petitioner has failed to prove that "the deficient performance actually prejudiced the defense." *Id.* In order to show such prejudice, the Petitioner would have had to offer proof that "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different." The Court is of the belief Petitioner has failed his burden of proof for this point. In fact, the Tennessee Court of Criminal Appeals has held that counsel's failure to advise his client about the details of his parole eligibility, including sex offender programs, does not amount to ineffective assistance of counsel. *Studdard v. State*, No. W2004-00500-CCA-R3-PC, LEXIS 752 at 15 (Tenn. Crim. App. 2006)

(some citations omitted).

In order for the Petitioner to prevail herein, he must show, by clear and convincing evidence, that his attorney failed to properly advise him of the possible consequences of his plea and that trial counsel's failure to do so resulted in prejudice. Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. *See Hill*, 474 U.S. at 56. The post-conviction court concluded that Counsel was ineffective in informing the Petitioner of the consequences of his guilty plea, and the evidence supports that conclusion.

We, however, conclude that the evidence preponderates against the post-conviction court finding that the Petitioner has not proven prejudice. Counsel readily admits that the Petitioner wanted to go to trial but participated in lengthy plea negotiations, after which he agreed to enter a "best interest" plea. He maintained at the hearing that he would have insisted upon taking his case to trial had he been properly informed of the consequences of his guilty plea. For the reasons set forth in the following section concerning the knowing and voluntary nature of the Petitioner's guilty plea, we conclude that the Petitioner is entitled to post-conviction relief. *See Hill*, 474 U.S. at 59.

### B. Knowing and Voluntary Plea

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). The circumstances include:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (citing *Caudill v. Jago*, 747 F.2d 1046, 1052 (6th Cir.1984)). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." *Id.*

In the case under submission, the post-conviction court found:

> Regarding the challenge to the knowing and voluntariness of his plea, the Court is also of the opinion that the Petitioner has not satisfied his burden of proof. Looking to the totality of the circumstances, the Court finds the Petitioner entered a voluntary plea because he is very familiar with criminal proceedings, he

-7-

is familiar with sex offender law as he was previously convicted as a sex offender, he is relatively intelligent, he was represented by competent counsel, he had opportunity to confer with his counsel, and he pled no contest in order to receive sentence less than a trial possibility would have resulted in. The Court is also of the opinion that the Petitioner entered a knowing plea because, according to the plea transcript, the Court revealed that he fully understood the plea and its consequences.

There is no case directly on point, discussing whether a petitioner who is *misinformed* about the requirements of community supervision for life is entitled to post-conviction relief on the grounds that his guilty plea was not knowingly and voluntarily entered. We, however, find instructive the cases discussing whether a petitioner is entitled to post-conviction relief in the context of the parole eligibility requirements of the sex offender statute. These cases distinguish between circumstances in which the petitioner's counsel *fails* to inform the petitioner of release requirements of the sex offender statute and when the petitioner's counsel *misinforms* the petitioner of such requirements.

In *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003), the petitioner argued that his guilty pleas to two counts of attempted rape were rendered unknowing and involuntary because he was not advised of the mental health requirements he would be required to meet as a sex offender, pursuant to Tennessee Code Annotated section 40-35-503(c) (2003), before he could be released on parole. In rejecting the petitioner's claim, our Supreme Court distinguished the facts of his case, in which he was advised of the accurate parole eligibility date but not informed of the specific conditions he would be required to meet to achieve release, from the facts in *Howell v. State*, 569 S.W.2d 428, 435 (Tenn. 1975), in which the Court granted a petitioner post-conviction relief on the basis that he entered his guilty plea while under a misunderstanding about his release eligibility date:

> Unlike the defendant in *Howell*, Mr. Jaco was not misinformed about his parole eligibility date. He will in fact become parole eligible after serving thirty percent of his sentence although he may not *actually* be released. His release eligibility date is simply the point at which he will be considered for parole under the applicable standards . . . .
>
> In this case, the post conviction trial court found that no sex offender has been released after serving only thirty percent of his sentence unless the mental health professional concluded that a future sex offense was physically impossible. Nonetheless, a Range I standard offender convicted of a sex crime becomes parole eligible after serving thirty percent of the actual sentence imposed. Tenn. Code Ann. § 40-35-501(c) (2003). The required evaluation affects the likelihood of actual release, but it does not affect the release eligibility date. Thus, unlike the defendant in *Howell*, Mr. Jaco received accurate information regarding his release eligibility date prior to entering his plea.

*Jaco*, 120 S.W.3d at 832.

This Court similarly concluded that erroneous information given to a petitioner – that certain of his sentences would run concurrently – entitled him to the appointment of counsel and an evidentiary hearing on the issue of whether his guilty pleas were unknowing and involuntary. *Charlton v. State*, 987 S.W.2d 862, 867 (Tenn. Crim. App. 1998). We held that a petitioner is entitled to "rely upon the advice of his attorney, especially when confirmed by the trial judge." *Id.* Further, we concluded that, "If, based upon the particular circumstances of this case, it is established that the plea agreement was entered into under the collective misunderstanding that [the sentences] would be concurrently served, the plea agreement should be set aside as neither knowing nor voluntarily made . . . ." *Id.*

We have, in other instances, granted a petitioner post-conviction relief when his guilty plea is entered after having been significantly misinformed. *See Joseph A. Maine v. State*, No E2004-00143-CCA-R3-PC, 2005 WL 1996631, at *7 (Tenn. Crim. App., at Knoxville, Aug. 19, 2005) (granting post-conviction relief when a petitioner was misinformed about the sentences he would be required to serve), *no Tenn. R. App. P. 11 application filed*; *cf. Thomas Studdard v. State*, No. W2004-00500-CCA-R3-PC, 2006 WL 2771033, at *7 (Tenn. Crim. App., at Jackson, Sept. 27, 2006) (denying post-conviction relief when counsel correctly informed the petitioner of his parole eligibility date but failed to inform the petitioner about the requirements he must complete prior to being paroled), *no Tenn. R. App. P. 11 application filed*.

In the case under submission, the totality of the circumstances of the case lead us to conclude that the Petitioner's guilty plea was not knowingly and voluntarily entered. Counsel readily admits that the Petitioner wanted to go to trial but participated in lengthy plea negotiations, after which he agreed to enter a "best interest" plea. Counsel informed the Petitioner that community supervision for life would require nothing more of the Petitioner than he was already required to do as part of his participation in the sex offenders registry. The sex offenders registry program is unsupervised, free, and requires that an offender register his address. The community supervision for life program is much more intensive, requiring the offender to report to a parole officer, who has wide discretion in the imposition of requirements, and to pay a monthly fee. Under these circumstances, we conclude that the Petitioner, relying on Counsel's advise that the two programs were the same, was significantly misinformed. Therefore, under such circumstances, his plea cannot be found to have been knowing and voluntary. Accordingly, we reverse the post-conviction court's dismissal of the petitioner and remand for the Petitioner to withdraw his best interest plea and for further proceedings consistent with this opinion.

## III. Conclusion

Based on the foregoing reasoning and authorities, we reverse the judgment of the post-conviction court and remand the matter for the Petitioner to withdraw his best interest plea and for further proceedings consistent with this opinion.

_____
ROBERT W. WEDEMEYER, JUDGE